IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES L. SAHS, | ) | 4:10CV3161 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

In this social security appeal, plaintiff James L. Sahs ("Sahs") argues that the Commissioner of Social Security committed reversible error in determining that he is not entitled to disability insurance benefits. For the reasons discussed below, the Commissioner's decision is reversed and remanded.

**A.    Background**

On April 26, 2006, Sahs filed an application for disability insurance benefits. (Tr. 26, 118-20.) In his application, Sahs alleged that he has been disabled, and has not been able to perform substantial gainful activity, since August 13, 1975.[1] (Tr. 16, 18.) Sahs' application was denied initially and on reconsideration. (Tr. 16, 29-31, 44-53, 58-61.) On March 3, 2009, an administrative law judge ("ALJ") issued a

---

[1]Because Sahs' disability insurance status expired on September 30, 1977, his disability insurance application was limited to the time period between August 13, 1975, and September 30, 1977. (Tr. 20, 150.) *See* 20 C.F.R. § 404.131(b) ("To become entitled to disability insurance benefits, you must have disability in the first full month that you are disabled."); *Long v. Charter*, 108 F.3d 185, 187 (8th Cir. 1997) (finding that evidence of claimant's condition need only be considered through the date she was last insured).

decision finding that Sahs was not disabled within the meaning of the Social Security Act. (Tr. 13-27.) In her decision, the ALJ followed the five-step sequential analysis prescribed by the Social Security Regulations to evaluate Sahs' disability claim.[2] *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ found as follows:

1. Sahs last met the insured status requirement of the Social Security Act through September 30, 1977.

2. Sahs did not engage in substantial gainful activity during the period from his alleged onset date of August 13, 1975, through his date last insured of September 30, 1977.

3. Through the date last insured, Sahs had the following severe impairments: chest pain, a history of shrapnel wounds with nerve damage to the left arm and left hand, and chest pain with vascular

---

[2] The Social Security Administration uses a five-step process to determine whether a claimant is disabled. These steps are described as follows:

> At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the [residual functional capacity] to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

damage.

4. Through the date last insured, Sahs did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Through the date last insured, Sahs had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and was able to lift twenty pounds occasionally and ten pounds frequently. He had no difficulty sitting/standing or walking. He should have avoided ladders, scaffolds, dangerous heights and hazardous machinery. He could use his left arm for no more than occasional reaching, feeling and fingering. There were no limitations in his dominant right arm.

6. Through the date last insured, Sahs was unable to perform any past relevant work.

7. Sahs was born on January 16, 1950, and was 27 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. Sahs has at least a high school education and is able to communicate in English.

9. Whether Sahs has transferable job skills is not material to the determination of disability because the Medical-Vocational Rules, as a framework, support a finding that Sahs is "not disabled."

10. Through the date last insured, considering Sahs' age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Sahs could have performed.

11. Sahs was not under a disability, as defined in the Social Security Act, at any time from June 17, 1969, through September 30, 1977, the date last insured.

damage.

4. Through the date last insured, Sahs did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Through the date last insured, Sahs had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and was able to lift twenty pounds occasionally and ten pounds frequently. He had no difficulty sitting/standing or walking. He should have avoided ladders, scaffolds, dangerous heights and hazardous machinery. He could use his left arm for no more than occasional reaching, feeling and fingering. There were no limitations in his dominant right arm.

6. Through the date last insured, Sahs was unable to perform any past relevant work.

7. Sahs was born on January 16, 1950, and was 27 years old, which is defined as a younger individual age 18-49, on the date last insured.

8. Sahs has at least a high school education and is able to communicate in English.

9. Whether Sahs has transferable job skills is not material to the determination of disability because the Medical-Vocational Rules, as a framework, support a finding that Sahs is "not disabled."

10. Through the date last insured, considering Sahs' age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Sahs could have performed.

11. Sahs was not under a disability, as defined in the Social Security Act, at any time from June 17, 1969, through September 30, 1977, the date last insured.

(Tr. 16-27.)  After the ALJ issued her decision, Sahs filed a timely request for a review hearing with the Appeals Council of the Social Security Administration.  (Tr. 780.)  On June 16, 2010, the Appeals Council denied Sahs' request for review.  (Tr. 5-6.)  Thus, the ALJ's decision stands as the final decision of the Commissioner of Social Security.

**B.   Standard of Review**

A denial of benefits by the Commissioner is reviewed to determine whether the denial is supported by substantial evidence on the record as a whole.  *Hogan v. Apfel*, 239 F.3d 958, 960 (8th Cir. 2001).  "Substantial evidence" is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.  *Id.* at 960-61; *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  Evidence that both supports and detracts from the Commissioner's decision must be considered, but the decision may not be reversed merely because substantial evidence supports a contrary outcome.  *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001).

This court must also review the decision of the Commissioner to decide whether the proper legal standard was applied in reaching the result.  *Smith v. Sullivan*, 982 F.2d 308, 311 (8th Cir. 1992).  Issues of law are reviewed de novo.  *Olson v. Apfel*, 170 F.3d 820, 822 (8th Cir. 1999); *Boock v. Shalala*, 48 F.3d 348, 351 n.2 (8th Cir. 1995).

**C.   Medical and Work History**

On June 17, 1969, while Sahs was serving the United States in Vietnam, shrapnel from a mortar shell wounded him in the left groin, chest wall, face, neck and arms.  (Tr. 524, 532, 542-543, 554.)  Upon examination, Sahs' left arm had no sensation and no pulse.  (Tr. 534, 570.)  On June 18, 1969, Sahs underwent surgery

to remove the shrapnel. (Tr. 540-43.) Although this surgery restored a pulse to Sahs' left arm, an evaluation three days later showed "definite median nerve damage manifested by weak flexion." (Tr. 525, 540.) Between June 22, 1969, and October 15, 1970, Sahs underwent four additional surgeries for his shrapnel injuries. (Tr. 382, 386, 434, 460-61, 524.) Sahs was honorably discharged from the Army on May 13, 1971. (Tr. 168.)

On June 30, 1971, Sahs visited Dr. J.C. Goldner ("Goldner") for "a compensation type examination." (Tr. 347-49.) Goldner noted that Sahs' "chief disability" was his "left upper extremity." (Tr. 347.) During the examination, Goldner determined that Sahs' right hand could produce 110 units of pressure, while his left hand could produce "only about 20." (Tr. 348.) Sahs had considerable difficulty and some weakness opening and closing his left hand. (*Id*.) However, Goldner also noted that Sahs still engaged in recreational activities like hunting, horseback riding, playing cards, reading, dancing, listening to music and watching television and movies. (Tr. 347.)

On February 25, 1972, Goldner examined Sahs again, noting that he was working steadily as a gas station attendant and continued to engage in a variety of recreational activities. (Tr. 324.) However, tests revealed that Sahs still had weakness in his left forearm and hand, with a grasp pressure of 40 units compared to a normal grasp pressure of 90 units. (Tr. 325.) Sahs continued working as a gas station attendant, but eventually moved on to a full-time postal carrier position. (Tr. 143, 154, 801.)

As a postal worker, Sahs walked two hours daily, stood eight hours daily, handled small objects four hours daily, reached two hours daily and lifted 25 pounds frequently. (Tr. 160.) However, on August 13, 1975, Sahs was hospitalized for "crushing chest pain" and "varying pain in his left shoulder as well as some increased numbness and tingling in his left hand." (Tr. 302, 304.) Upon examination, Dr. G.R.

5

Carlton ("Carlton") noted that Sahs "had weakness of the left hand, although it is not marked and had not impaired him from his occupation as a United States Postal Service mail carrier." (*Id*.) Sahs also had "marked atrophy of the intrinsic musculature of the left hand . . . Ulnar deviation of the fingers and a flexion deformity of the little finger." (Tr. 302.) Sahs' prognosis was "[g]ood for both the arm and the chest pain," but Carlton recommended that he "change his occupation" to work that did not involve "so much" chest twisting or left-arm use. (*Id*., Tr. 299.)

On December 24, 1975, the Veteran's Administration ("VA") issued a rating decision regarding Sahs' entitlement to "individual unemployability benefits." (Tr. 300.) The rating decision stated that:

> The veteran . . . may have to change his occupation and he was referred to the Social Service for vocational rehabilitation. He has fairly good function of his hand. The veteran stated that he has crushing chest pain, and that this occurred when he was working as a postman.
>
> . . . .
>
> The veteran is obviously unable to continue with his current occupation due to his SC grievous wounds. He must be retrained. Entitlement to individual unemployability benefits is being granted, therefore, from the date of hospital entry which is the day following his last date of employment according to his employer.

(*Id*.)

**D.     Administrative History**

   *1.     Dr. Glen D. Knosp's Opinion*

In July 2006, Dr. Glen D. Knosp ("Knosp") reviewed the record and offered an opinion regarding Sahs' functional capacity between August 1975 and September 1977. (Tr. 268-77.) Knosp concluded that, during the period in question, Sahs retained the capacity to sit, stand and walk for six hours each in an eight-hour workday, and could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 269.) Sahs also had the ability to balance, stoop and crouch frequently, and kneel and crawl occasionally. (Tr. 270.) However, Sahs could not perform overhead work or repetitive movements with his left arm. (Tr. 271.)

   *2.     Dr. James M. Carraher's Opinion*

On January 23, 2007, Dr. James M. Carraher ("Carraher"), Sahs' treating physician at the time of the hearing, submitted a letter stating that Sahs currently had a "claw-like use of his hand and cannot fully use his hand, as he cannot fully flex it or fully extend all of his fingers." (Tr. 777.) Carraher started treating Sahs in 1993 and had examined Sahs' left arm on numerous occasions. (Tr. 708, 730, 746, 758-59, 763, 760, 765, 776, 779).

   *3.     Hearing Testimony*

On February 4, 2009, the ALJ held a hearing on Sahs' social security appeal. (Tr. 17-45.) At the hearing, Sahs described his work at the post office as "fairly light," but also acknowledged that the mail bag he carried weighed approximately 30 pounds. (Tr. 816, 824-25.) Sahs quit working at the post office because the VA told him his "disability was severe enough that [he] shouldn't have held a job of any

7

type." (Tr. 815-16.) Sahs also testified that he continues to practice his hobbies of photography and muzzle-loading. (Tr. 819.)

After Sahs' testimony, Dr. John Craig Billinghurst ("Billinghurst") testified that Sahs' injury to his left arm and hand were severe impairments. (Tr. 23, 825, 830.) However, he also testified that, during the period in question, Sahs could have lifted 20 pounds occasionally and 10 pounds frequently when using both hands and would have had no difficulty walking, standing or sitting for six hours. (Tr. 23, 830.) Billinghurst stated that Sahs would have needed to avoid climbing ropes, ladders, scaffolds and would have been limited to only occasional postural activities. (*Id*.) Sahs also would have been limited to occasional gross manipulation, fine manipulation and reaching with his left arm, but would have had no limitations with his right arm. (Tr. 23, 830-31.) He also would have needed to avoid unprotected heights and moving machinery. (*Id*.)

After Billinghurst's testimony, the ALJ asked vocational expert Steven Kuhn ("Kuhn") if there was any work, either light or sedentary, that a hypothetical person with Sahs' age, education and work experience could perform. (Tr. 838-39.) This hypothetical individual could lift and carry 20 pounds occasionally and 10 pounds frequently. (*Id.*) The individual would have no limitations with his right arm, but would be limited to occasional, "not to exceed frequent," handling, fingering and feeling with his left arm. (Tr. 839.) The individual could use his left arm occasionally, including for reaching in all directions. (*Id*.) The individual would also be limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling and could not work on ladders, ropes, or scaffolds. (*Id*.) He could not work around dangerous machinery or heights. (*Id*.) Kuhn answered, stating that this hypothetical individual could not perform his past relevant work because those positions were all performed at a medium physical demand level. (Tr. 839-40.) However, Kuhn testified that the hypothetical individual could perform light work as a messenger (Dictionary of Occupational Titles ("DOT") 230.663-013), general office

8

clerk (DOT 245.367-014), and cashier (DOT 211.462-010), as well as sedentary work in some office positions, as a sedentary driver (DOT 919.663-022) and as a sedentary interviewer (DOT 205.367-014). (Tr. 840-42.)

**E.     Discussion**

In his appeal brief, Sahs argues that the ALJ erred in denying his disability claims because she (1) relied on vocational expert testimony that conflicted with the DOT in determining that Sahs could perform substantial gainful activity, (2) concluded that his left arm impairments did not meet or equal the Listing of Impairments and (3) asked a hypothetical question which overstated Sahs' vocational potential and failed to include Carraher's opinion. (Filing 14 at CM/ECF pp. 7-26.) Defendant contends that Sahs cannot satisfy the Listing of Impairments and that any error by the ALJ is harmless. (Filing 17 at CM/ECF pp. 9-19.)

   *1.     Vocational Testimony*

Sahs argues that the ALJ improperly relied on Kuhn's vocational testimony because it conflicted with the DOT. (Filing 14 at CM/ECF pp. 17-22.) An ALJ's use of vocational testimony is squarely controlled by Social Security Ruling 00-4p. SSR 00–4p, 2000 WL 1898704 (Dec. 4, 2000). SSR 00-4p emphasizes that before an ALJ can rely on vocational evidence to support a disability determination or decision, she must:

> Identify and obtain a reasonable explanation for any conflicts between occupational evidence . . . and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and [e]xplain in the determination or decision how any conflict that has been identified was resolved.

*Id*. But see *Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) (concluding that ALJ's failure to ask the vocational expert about possible conflicts between his testimony and the DOT was harmless where no conflict with the DOT existed); *Bonnell v. Astrue*, 650 F. Supp. 2d 948, 961 (D. Neb. 2009) (concluding that the ALJ's failure to ask the vocational expert whether his testimony conflicted with the DOT was harmless where only two of five DOT occupations conflicted with the vocational expert's testimony).

Here, the ALJ's hypothetical question described an individual limited to occasional, "not to exceed frequent," handling, fingering and feeling with his left arm. (Tr. 839.) This individual could use his left arm occasionally, including for reaching in all directions.[3] (*Id.*) Kuhn testified that this hypothetical individual could perform light work as a messenger (DOT 230.663-013), general office clerk (DOT 245.367-014), and cashier (DOT 211.462-010), as well as sedentary work as a driver (DOT number 919.663-022) and interviewer (DOT 205.367-014).[4] (Tr. 840-42.) Although the ALJ stated that this testimony was consistent with the DOT (Tr. 26), all of these jobs require frequent reaching:

- "Messenger" (Tr. 26, 840), DOT 230.663-010,[5] requires frequent reaching and handling (SCO at 335).
- "General Office Clerk" (Tr. 26, 840), DOT 245.367-014 (DOT at

---

[3]The ALJ's residual functional capacity ("RFC") determination clarified that Sahs could use his "left arm for no more than occasional reaching and feeling, fingering." (Tr. 20.)

[4]Kuhn also testified that there was no discrepancy between his testimony and the exertion and skill levels required for the DOT jobs he provided. (Tr. 841.)

[5]DOT 230.663-013 does not exist. DOT 230.663-010 is the DOT number for Messenger.

> 213), requires frequent handling, reaching and fingering (SCO at 333).
> - "Cashier" (Tr. 26, 840), DOT 211.462-010 (DOT at 183), requires frequent reaching, handling and fingering (SCO at 93).
> - "Driver" (Tr. 26, 842), DOT 919.663-022 (DOT at 930), requires frequent reaching and handling (SCO at 93).
> - "Interviewer" (Tr. 26, 842), DOT 205.367-014 (DOT at 174-175), requires frequent reaching and handling (SCO at 335).

In addition, Kuhn testified that the hypothetical individual could perform work in a sedentary office position. (Tr. 26, 841-842.) Sahs argues that all sedentary general office worker positions are classified as semi-skilled work, which Sahs cannot perform. (Filing 14 at CM/ECF p. 21.) However, the DOT lists an "election worker" (DOT 205.367-030) as a sedentary office worker with a specific vocational preparation level of 2 that requires only occasional reaching, handling and fingering (SCO 336). The record is unclear as to whether the "election worker" position was available in significant numbers within the regional or national economy during the time period in question. *See* 20 C.F.R. §§ 404.1566(a), 416.966(a) (stating that the Commissioner considers whether a claimant can perform other work which exists in significant numbers either in the region where the claimant lives or in several other regions of the country).

Although the Commissioner acknowledges that the ALJ's hypothetical question contemplated an individual who was limited to only occasional reaching with his left arm, the Commissioner uses *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000), to argue that there is no actual conflict between the ALJ's testimony and the DOT. (Filing 17 at CM/ECF p. 16.) Specifically, the Commissioner argues that although the jobs of account clerk, driver and interviewer list a need for frequent reaching, they do not list a need for frequent *bilateral* reaching. (*Id*. at CM/ECF pp. 16-17.)

11

In *Carey*, a vocational expert testified that a plaintiff could perform work as a cashier and ticket taker despite having functional use of only one arm. 230 F.3d at 145. The ALJ relied on this testimony to decide that the plaintiff was not disabled. *Id*. at 134. On appeal, the plaintiff argued that the ALJ's decision was not supported by substantial evidence because the vocational expert's testimony conflicted with the DOT's job descriptions for a cashier and a ticket taker. *Id*. at 144. In addressing this issue, the Fifth Circuit stated that there was a circuit split on whether an ALJ may rely upon the testimony of a vocational expert when that expert's testimony is either in conflict with, or creates a conflict with, DOT provisions. *Id*. at 144-45. The Fifth Circuit then went on to conclude that because the DOT descriptions for a cashier and a ticket taker did not contain a requirement of *bilateral* fingering ability, they could be performed with the use of only one arm and hand. *Id*. at 146 (emphasis added).

In citing to *Cary*, however, the Commissioner fails to address the Fifth Circuit's discussion of *Smith v. Shalala*, 46 F.3d 45 (8th Cir. 1995). 230 F.3d at 144 (stating that "[t]he Eighth Circuit clearly holds that an ALJ may not rely upon the testimony of a vocational expert if the expert's testimony conflicts with the DOT"). Moreover, the Commissioner does not address SSR 00-4p, which became effective 60 days after the Fifth Circuit issued its opinion in *Cary*. Compare SSR 00–4p (policy interpretation ruling dated Dec. 4, 2000), with *Carey*, 230 F.3d 131 (decided Oct. 5, 2000). Because *Cary* conflicts with *Smith* and SSR 00-4p, *Cary* does not reflect current Eighth Circuit law and is not controlling in this case.

In sum, Kuhn's testimony conflicts with all of the DOT descriptions that he provided. Pursuant to SSR 00-4p, the ALJ had a duty to identify and obtain a reasonable explanation for the conflict. The ALJ failed to do so, relied on Kuhn's testimony in reaching her decision and then failed to explain or resolve the conflict in her decision. (Tr. 20.) Unlike *Renfrow* and *Bonnell*, this error was not harmless because Kuhn did not provide a DOT number regarding sedentary office positions, and the record does not provide sufficient information for the court to conclude that

a non-conflicting sedentary office position (e.g., an "election clerk") existed in significant numbers within the regional or national economy during the time period in question. Accordingly, the Commissioner's decision must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) so that the ALJ can properly develop the record pursuant to SSR 00-4p and issue a new decision.

  2. *Listing Level*

  Sahs also argues that the ALJ erred in concluding that his left arm impairments did not meet or equal the criteria in Listing 1.08. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.08. To meet Listing 1.08, a claimant must have "[s]oft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." *Id*. "Continuing surgical management" is defined as:

> surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00M.[6]

  If a claimant meets or medically equals one of the listed impairments in the listings for the required durational period of time, the claimant will be found disabled.

---

[6]The prefatory language to the musculoskeletal listings, which include Listing 1.08, defines "major function" of the face and head. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00M. It does not define "major function" in the context of upper extremities. *Id*.

20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). A claimant has the burden to show that his impairment meets the listing criteria. *See* Carlson v. Astrue, 604 F.3d 589, 593 (8th Cir. 2010). Furthermore, "[f]or cases at the Administrative Law Judge or Appeals Council level, the responsibility for deciding medical equivalence rests with the Administrative Law Judge or Appeals Council." 20 C.F.R. § 404.1526(e).

The record reveals that Sahs sustained a soft tissue injury when a mortar shell wounded him in the left groin, chest wall, face, neck and arms on June 17, 1969. (Tr. 524, 532, 542-543, 554.) Between June 18, 1969, and October 15, 1970, Sahs underwent five surgeries to restore function to his left arm. (Tr. 382, 386, 434, 460-61, 524, 540-43.) Thus, Sahs clearly had a soft tissue injury and was under continuing surgical management between June 18, 1969, to October 15, 1970.

The Commissioner does not dispute that Sahs was hospitalized and underwent surgical management for an extended period.[7] (Filing 17 at CM/ECF p. 10.) Nevertheless, the Commissioner argues that Sahs does not satisfy Listing 1.08 because the major function of his left arm and hand was restored. (*Id*. at CM/ECF pp. 10-13.) Indeed, to satisfy the requirements of Listing 1.08, Sahs must show that a "major function was not restored or expected to be restored within 12 months of onset." *Id*. Sahs asserts that he satisfies this requirement because he cannot use his left arm and hand "normally." (Filing 14 at CM/ECF pp. 13-14.) Sahs also argues that Carraher's opinion, which indicated that he had a "claw-like use of his hand" and

---

[7]The court notes that Sahs seeks disability benefits for the period of August 13, 1975, through September 30, 1977. (Tr. 20, 150.) To satisfy Listing 1.08's continuing surgical management requirement, Sahs must show that he was undergoing associated treatments directed toward the salvage or restoration of functional use of his left arm and hand during that time period. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00M. The Commissioner does not argue that Sahs' treatment from August 13, 1975, to September 30, 1977, does not qualify as continuing surgical management. (Filing 17 at CM/ECF pp. 9-13.)

14

could not "fully extend all of his fingers," establishes that a major function of his left hand was not restored. (Tr. 777; Filing 14 at CM/ECF pp. 24-26.)

Although the Eighth Circuit has never interpreted Listing 1.08, it has interpreted a similar predecessor listing, Listing 1.13. *See Senne v. Apfel*, 198 F.3d 1065 (8th Cir. 1999); *see also Howl v. Astrue*, No. 2:08-0038, 2011 WL 91130, at *14 (M.D. Tenn. Jan. 10, 2011) (using the Sixth Circuit's analysis of the purpose of Listing 1.13 for the purpose of Listing 1.08). Listing 1.13 encompassed "[s]oft tissue injuries of an upper or lower extremity requiring a series of staged surgical procedures within 12 months after onset for salvage and/or restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.13 (1999). In *Senne*, the Eighth Circuit held that Listing 1.13 did not require a claimant to be unavailable for employment during the course of his surgeries. 198 F.3d at 1068; *but see*, *Waite v. Bowen*, 819 F.2d 1356, 1360 (7th Cir. 1987) (concluding that the purpose of Listing 1.13 is to allow a period of recovery for surgical restoration of an impaired limb, the functional loss of which is implicitly regarded as not disabling); *Lapinsky v. Sec'y of Health & Human Servs.*, 857 F.2d 1071, 1073 (6th Cir. 1988) (concluding "[w]hen the claimant is no longer unavailable for employment due to the surgical procedures, he is no longer disabled within the contemplation of listing 1.13").

Here, the ALJ considered whether Sahs' impairments met or equaled "*any* listed impairment in Appendix 1, Subpart P, Regulations No. 4." (Tr. 19 (emphasis added).) In doing so, the ALJ considered the record, which included medical opinions from Goldner, Carlton, Knosp, Carraher and Billinghurst and a VA rating decision. (Tr. 268-77, 300, 302, 304, 324-25, 347-49, 777.) Based on the record as a whole, the ALJ concluded that Sahs "was limited but had fairly good use of the left hand and no serious problems with the dominant right hand." (Tr. 24.) The ALJ also emphasized that "[t]reating physicians at the time, such as Dr. Carlson, did not opine

15

that the claimant was completely unable to work." (Tr. 24.) Under this record, the court is unable to ascertain whether the ALJ's decision, with respect to Listing 1.08, was supported by substantial evidence. The ALJ did not specifically address Listing 1.08 and did not clarify whether Sahs' surgeries and treatment restored the major functions of his left arm and hand. Moreover, to the extent that the ALJ determined that Sahs' impairments did not satisfy Listing 1.08 because Carlson asserted that Sahs could still work, the ALJ's opinion conflicts with *Senne*.

As discussed above, the court is remanding this matter to properly develop the record pursuant to SSR 00-4p. On remand, the ALJ shall also specifically address whether Sahs' impairment satisfied the requirements of Listing 1.08.

### 3. *Remaining Arguments*

Sahs also argues that the ALJ's hypothetical question overstated his vocational potential and failed to include Carraher's opinion. (Filing 14 at CM/ECF pp. 22-24.) Sahs further argues that the ALJ erred in giving Carraher's opinion little weight. (*Id*. at CM/ECF pp. 24-26.) Because this court is remanding this matter for further development of the record, the ALJ's hypothetical question and analysis may change. Therefore, the court declines to address Sahs' remaining arguments.

IT IS ORDERED that:

1. The Commissioner's decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall properly develop the record pursuant to SSR 00-4p and address whether Sahs' impairments satisfy Listing 1.08.

2. Judgment shall be entered by separate document providing that the decision of the Commissioner is reversed and remanded.

DATED this 5th day of August, 2011.

> BY THE COURT:
>
> s/*Richard G. Kopf*
> United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.